ACCEPTED
04-14-00533-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/9/2015 3:49:00 PM
KEITH HOTTLE
CLERK

NO. 04-14-00533-CV

# Fourth Court of Appeals
# San Antonio, Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
03/9/2015 3:49:00 PM
KEITH E. HOTTLE
Clerk

**BARBARA ARTHUR, individually and as Independent Executrix of the Estate of Kenneth W. Arthur, et al., Appellants,**

**V.**

**UVALDE COUNTY APPRAISAL DISTRICT et al., Appellees.**

## REPLY BRIEF OF APPELLANTS

On appeal from the 38th Judicial District Court, Uvalde County, Texas
Case No. 2012-04-28619-TX
Honorable Watt Murrah, Presiding

Benjamin R. Bingham
State Bar No. 02322350
ben@binghamandlea.com
BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
(210) 224-1819  Telephone
(210) 224-0141  Facsimile

COUNSEL FOR APPELLANTS,
BARBARA ARTHUR, individually and
as Independent Executrix of the Estate of
Kenneth W. Arthur, ENCINO LODGE
CORPORATION, and CONCAN
SOUTH PASTURE, INC.

**ORAL ARGUMENT REQUESTED**

1

The Arthurs file this Reply Brief.

## INTRODUCTION

It is clear from UCAD's Brief that there are no genuine disputes about any of the material facts in this case. The events are not in dispute. The disputes are about the legal significance or consequences of the events that did happen.

UCAD does not challenge or dispute the existence or terms of the agreements that Patti Van Pelt made with the Chief Appraiser. UCAD does not deny that the Chief Appraiser expressed in writing to Ms. Van Pelt his assent to specific values for specific tracts for specific tax years. UCAD does not deny that the Chief Appraiser expressed his assent to specific reduced values for specific tracts of land and to the credits that would accrue (or be owed) to the Arthurs because they had previously paid taxes based on higher values.

UCAD does not dispute the authenticity of the writings; UCAD does not dispute that its Chief Appraiser signed or initialed the documents to reflect his assent. Nor does UCAD say the documents mean something different than what the Arthurs say.

UCAD simply says (1) that because the Arthurs did not file a designation of Ms. Van Pelt as their agent the undisputed substance of the agreements the Chief Appraiser made with Ms. Van Pelt does not bind UCAD (even though UCAD concedes Ms. Van Pelt was an employee of the Arthurs) and (2) the Comptroller's

2

Rule 9.3044(f) providing that property owners need not file written designations of agency for their employees is unenforceable, at least against UCAD.

UCAD also says the Arthurs had the burden of proof and continues to say the Arthurs failed to exhaust administrative remedies, although even now UCAD fails to say what administrative remedies were available to the Arthurs to force UCAD to abide by the Chief Appraiser's agreement with Ms. Van Pelt.

In the Argument below, the Arthurs **first** show they did not have the burden of proof and that procedurally the trial court erred by granting summary judgment. They also show in the **second** section below that Comptroller Rule 9.3044(f) is valid and enforceable against UCAD. In the **third** section the Arthurs show there were no administrative remedies or procedures for them to invoke or exhaust before asserting their claim against UCAD in Court.

## ARGUMENT

### First—UCAD's Use Of A No Evidence Motion For Summary Judgment Was Flawed And The Trial Court Erred By Granting It

Simply put, UCAD misunderstands the burden of proof in a challenge to subject matter jurisdiction. UCAD says the Arthurs "imply that the burden [was] upon movant UCAD." UCAD Brief at p. 9. The Arthurs do not simply imply that—they clearly say that and stand by that proposition.

As the movant seeking dismissal for lack of jurisdiction, UCAD bore the evidentiary burden of proof. *Mission Consolidated Ind. School Dist. v. Garcia*,

3

372 S.W.3d 629, 638 (Tex. 2012). As the party with the burden of proof, UCAD could not use a no evidence motion for summary judgment to challenge jurisdiction. *City of Laredo v. Rio Grande H2O Guardian*, 2011 Tex. App. LEXIS 5729, *9 (Tex. App.—San Antonio July 27, 2011, no pet.).

UCAD correctly quotes the standard for a trial court on when to grant a no evidence motion under Rule 166(a)(i). UCAD Brief at p. 9. But *that standard applies only when Rule 166(a)(i) is available—i.e., only when the movant does not have the burden of proof.* UCAD seems unable to appreciate that Rule 166(a)(i) cannot be used when the movant does bear the burden of proof on an issue. To the extent the trial court dismissed the Arthurs claim based on UCAD's no evidence summary judgment or granted that motion, the trial court erred.

Even on occasions when a no evidence motion for summary judgment is proper, if the movant submits evidence with the motion, the trial court cannot consider the evidence except for the purpose of finding a disputed fact question and denying the motion. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004) ("if a motion brought solely under subsection (i) attached evidence, that evidence should not be considered unless it creates a fact question").

Two unassailable conclusions about summary judgment practice emerge from the record in the trial court. First, the trial court should not have considered or granted UCAD's no evidence motion for summary judgment under any

4

circumstances because (1) UCAD had the burden of proof and (2) no evidence motions for summary judgment are available only to a movant who does not have a burden of proof. Additionally, even while the trial court was erroneously considering UCAD's no evidence motion for summary judgment, it should not have considered the affidavit of the Chief Appraiser submitted with that motion except for the purpose of finding that it created a disputed fact issue. The trial court simply could not have used or considered the affidavit as a basis for granting UCAD's no evidence motion.

Under these circumstances, the trial court erred by granting UCAD's no evidence motion for summary judgment.

## Second—Comptroller Rule 9.3044(f) Is Valid And Applies To UCAD

### *A. Waiver*

UCAD has not argued here or in the trial court that Ms. Van Pelt was not an employee of the Arthurs. Indeed, UCAD could not make this argument because UCAD unambiguously represented to the trial court that she was an employee of the Arthurs.

Nor does UCAD contend that application of the evidence here to Comptroller Rule 9.3044(f) leads to anything other than the inescapable conclusion that the Arthurs made binding agreements with the Chief Appraiser under Section 1.111(e) of the Tax Code. Obviously, with UCAD admitting Ms. Van Pelt was an

employee, application of Rule 9.3044(f) to the facts here precludes any other conclusion.

Rather, UCAD argues that it should be relieved from the effect of Rule 9.3044(f) because UCAD now believes the Rule conflicts with Section 1.111, and therefore, according to UCAD, Rule 9.3044(f) not enforceable. UCAD, however, has never sued the Comptroller to have Rule 9.3044(f) declared unconstitutional. UCAD did not ask the trial court to declare that Rule 9.3044(f) is unconstitutional in this case. Nor did UCAD move for summary judgment on the ground that Rule 9.3044(f) is unconstitutional or unenforceable. *See McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex. 1993) (requiring summary judgment be granted only on grounds stated in motion).

UCAD should not be permitted to defend the summary judgment now based on unconstitutionality or unenforceability when UCAD never presented unconstitutionality or unenforceability of Rule 9.3044(f) as a ground for summary judgment in the trial court. Because UCAD never moved for summary judgment based on the ground that Rule 9.3044(f) is unenforceable or unconstitutional, it has waived this argument.

**B. Rule 9.3044(f) Is A Reasonable Exercise Of The Comptroller's Authority**

Rule 9.3044(f) reflects the Comptroller's interpretation of Section 1.111 of the Tax Code under which an agent of a property owner is distinct from an

employee of a property owner.  The Comptroller's view is entitled to "serious consideration" and the "same stature" as an interpretation by a court of appeal. *Finance Commission of Texas v. Norwood*, 418 S.W.3d 566, 585 (Tex. 2013).

Rule 9.3044(f) is a reasonable exercise of the Comptroller's rulemaking authority.  Section 1.111(b) of the Code requires written designations of *agency,* not e*mployment*.  Because these words do not mean the same thing, it is reasonable for the Comptroller to make a rule on employment.

An agent is one who is authorized to conduct the business of her principal. *American Nat'l Ins. Co. v. Danke*, 95 S.W.2d 370, 372 & 373 (Tex. 1936); RESTATEMENT (SECOND) OF LAW OF AGENCY § 1 (ALI 1959); BLACK'S LAW DICTIONARY P. 32 (WEST 1983 abridged 5th ed.).  As the Supreme Court recognized in *American Nat'l Insurance Co.*, agents provide independent and professional services for their principal; the Court listed these examples, an "attorney, a broker, a factor, or a rental agent ...." 95 S.W.2d at 373.  The drafters of the RESTATEMENT list similar examples: "brokers, factors, attorneys, collection agencies, and selling agencies."  RESTATEMENT (SECOND) AGENCY § 14N, cmt. a.  An agent is typically a professional engaged to manage the principal's affairs with a significant measure of discretion and judgment conducting the affairs for the principal.  Indeed, as the RESTATEMENT observes,

> most of the persons known as agents [are] … independent contractors … since they are contractors but,

> although employed to perform services, are not subject to the control or right of control of the principal with respect to their physical conduct in the performance of the services.

*Id.*

An employee or servant, by contrast, is one who works under the close supervision of the employer or master in the control and detail of the work of the employer. *American Nat'l Insurance Co.*, 95 S.W.2d at 373.

The principal is liable for contracts the agent makes for the principal when the agency is properly disclosed. Disclosure is necessary because, without it, others have no way of knowing they are dealing with a representative of the principal.[1]

Independent professional tax consultants who represent owners in property tax disputes and discussions with chief appraisers generally are agents of owners, not their employees. Independent professional tax consultants generally provide their services negotiating and advocating with tax authorities for a number of clients. Property owners generally do not control the means and details of the work their consultants do; the consultants are generally independent contractors charged with accomplishing a task—trying to reduce the owner's taxes. The consultants use their professional skills and independent judgment to accomplish

---

[1] In general, a principal is not liable for the torts of her agent because torts are generally not within the scope of an agency and because the principal does not control or supervise the manner and means of the agent's work.

8

the task. Beyond a particular tax issue or tax year the consultant/agent may never represent the principal again, so it makes perfect sense to require a written designation of the agency.

An employee, by contrast, conducts her employer's business day in and day out under her employer's close supervision and direction. *American Nat'l Insurance Co.*, 95 S.W.2d at 373. For the employee, the employer's business is not a one-time matter or a once-a-year event. The employer cannot deny a relationship with and delegation of authority to an employee with the ease that an unwritten agency with an independent contractor can be denied because the employee conducts the employer's business every day.

Requiring written designation of agency for independent contractors also serves to reduce or eliminate disputes between professional tax consultants over who represents an owner. An internet search or survey of "property tax consultants" or "property tax advisors" quickly reveals the competitive nature of the market for providing those services. Careless or distracted property owners can easily hire more than one consultant to provide the same service. A husband may hire one consultant not knowing that his wife had already hired another.

Taxing authorities and chief appraisers should not be drawn into or distracted by discussions or debates between competing independent agents over who represents an owner; nor should the authorities be drawn into litigation over

which of competing independent agents earned a fee for reducing a property value for an owner.

None of those considerations apply, though, when the owner's representative before the taxing authority is the owner's employee.

Distinguishing between employees and independent agents is as old and sensible as the common law itself. BLACK'S LAW DICTIONARY, for example, recognizes that an "agent" is one who "undertakes to transact some business, or to manage some affair, for another," and "us[es] his own discretion as to means." BLACK'S at p. 32. BLACK'S instructs that, while "[s]ervant is synonymous with 'employee,'" "*'employee' must be distinguished from 'agent.*'" *Id.* at 273 (emphasis added); *see also* RESTATEMENT (SECOND) AGENCY § 2, cmt. a ("[t]he distinction between servants and agents who are not servants is of importance …").

With the ancient common law distinction between agency and employment, there is nothing unreasonable or arbitrary about what the Comptroller did in making Rule 9.3044(f). As demonstrated by the Comptroller's certification when Rule 9.3044 was adopted, making the Rule was a "valid exercise of the [Comptroller's] legal authority." 19 Tex. Reg. 1831. Rule 9.3044(f), therefore, is constitutional and enforceable.[2]

---

[2] This entry in the Texas Register is Appendix 9 to the Arthur's opening Brief.

UCAD argues that the Court should not even consider Rule 9.3044(f) because, according to UCAD, the Rule conflicts with Section 1.111(e) of the Tax Code. The Court should reject UCAD's argument for at least two reasons.

First, there is no conflict between Section 1.111 and Rule 9.3044(f). Section 1.111 uses the term "agent." Section 1.111(b) does not require use of a form of the authorization of an *employee* acting for an owner. Rule 9.3044(f), thus, is not inconsistent with Section 1.111.

On the other hand, if the term "agent" in Section 1.111(b) is ambiguous because it could mean either an independent agent or an employee, then, of course, the Court can and should consider and rely on the Comptroller's interpretation and the reasonable distinction between agents and employees. In this event, using the Comptroller's interpretation and recognizing the time honored distinction between employees and agents makes perfect sense. In either event, UCAD loses.

### Third—There Are No Administrative Remedies To Force UCAD To Honor Its Agreements

#### A. There Are No Administrative Remedies Or Procedures For Enforcing A Section 1.111 Agreement

UCAD's arguments on exhaustion of remedies entirely miss the substance of the Arthurs' claim. UCAD says by failing to challenge a number of valuations in tax years prior to the written agreements, the Arthurs failed to exhaust administrative remedies. But the Arthurs' claim is for UCAD's failure to honor

11

and abide by the written agreements; it is not about or based on what happened before the written agreements.

There simply can be no argument for any exhaustion of administrative remedies (or failure to exhaust administrative remedies) for enforcement of the written agreements. There were no administrative procedures for the Arthurs to invoke or exhaust to force UCAD or any other taxing authority to honor agreements under Section 1.111. UCAD has not identified anything in the Tax Code, anything in the Comptroller's rules, or any policy or procedure within UCAD providing any process or forum for requiring UCAD to honor its written commitments.

Court is the only forum for making UCAD honor its promises.

### B. No Motion Was Required Under Section 25.25 Of The Tax Code

For the first time on appeal UCAD now argues that the Arthurs' claims fail because the Arthurs did not file motions or petitions for review to satisfy UCAD's incorrect reading of the Tax Code. UCAD Brief at p. 18 ("Arthurs filed no motion"). The Court should reject this argument for two reasons.

First, UCAD cannot make this argument for the first time on appeal. UCAD was required to present its grounds for dismissal or for summary judgment in writing in the trial court, and it failed to present this ground. *McConnell*, 858 S.W.2d at 341.

12

Second, the argument is just flatly wrong. Section 25.25 matters only because an issue that could have been corrected under Section 25.25 is *one* of several subjects that a property owner and a chief appraiser can resolve through an agreement under Section 1.111(e). Here, the undisputed agreements the Arthurs pleaded and proved clearly relate "to a matter" that could have been "protested to [an] appraisal review board" or which could have been "corrected under Section 25.25 …." §1.111(e)(1) & (2). For example, under Section 25.25(b), the Chief Appraiser could have changed the appraisal roll *"at any time"* to correct any … inaccuracy" that did not increase the amount of the Arthurs' tax liabilities. No motion or petition was required for such a change. The high valuations and taxes assessed based on those valuations from prior years were inaccuracies.

UCAD's argument that there must have been a motion or petition for review has no basis or support in the words of Section 1.111(e). Section 1.111(e)(1) allows for an agreement on any "matter … which *may* be protested"—not only one that actually was protested.[3] Similarly, Section 1.111(e)(2) allows for an agreement on a matter "which *may* be corrected under Section 25.25 or on which a motion for correction … has been filed but not determined …."[4] Section 1.111(e) does not require that a written protest or motion be filed. Indeed, the second

---

[3] Emphasis added.
[4] Emphasis added.

13

alternative under Section 1.111(e) regarding a filed but not-yet-decided motion highlights that no motion is required at all under the first alternative.

The Legislature did not require a filed or pending motion, protest, or petition as a condition for application of Section 1.111(e). Nor did the Legislature say that a property owner could enforce a binding agreement with a chief appraiser only on motion, protest, or petition on which it appeared somehow "certain" the property owner could or would prevail.

Such a reading would obviate the whole point of Section 1.111(e), which clearly is to provide a mechanism for avoiding the risk, uncertainty, and expense of contested proceedings. Property owners seeking to enforce an agreement under Section 1.111(e) need not prove that they would have prevailed under Section 25.25, any more than a personal injury litigant seeking to enforce a settlement agreement must prove the merits of her underlying claim before she can enforce the settlement.

The Arthurs obviously thought they had factual and legal arguments for the reductions and credits they advocated to the Chief Appraiser. And the Chief Appraiser obviously thought so too—he *agreed to the reductions and credits*.

Undisputed evidence in the trial court shows counsel for UCAD at the time of the agreements also thought there was at least some basis for the agreements. In his e-mail on February 13, 2012, the Chief Appraiser represented to the Arthurs'

lender that counsel for UCAD had agreed to work with the parties in adjusting the values of the properties according to their agreements:[5]

> I have been working on adjusting the valuations and will be ready to submit the adjustments to our clerk for the final changes. I have also talked to the district delinquent tax attorney on our situation and he has agreed to work with us. If there are any questions please contact me at (830) 278-1106, Ext. 107. Thanks! Albert Mireles, CA

UCAD should not be permitted now to say it did not make the agreements when the undisputed written records clearly show it did make the agreements.

## CONCLUSION AND REQUEST FOR RELIEF

The trial court erred by dismissing the Arthurs' claims. It should have granted summary judgment for the Arthurs, or at least given them a trial on the claims. This Court should reverse the trial court's judgment. The Arthurs request the Court do so.

Respectfully submitted,

BINGHAM & LEA, P.C.
319 Maverick Street
San Antonio, Texas 78212
(210) 224-1819 Telephone
(210) 224-0141 Facsimile
ben@binghamandlea.com

BY: _/s/ Benjamin R. Bingham_
    BENJAMIN R. BINGHAM
    State Bar No. 02322350

COUNSEL FOR APPELLANTS

---

[5] This e-mail is reproduced in its entirety on page 14 of the Arthur's opening Brief.

## CERTIFICATE ON WORD COUNT

I certify that by my signature below that, according to the feature of the Word program used to create this Brief, this Brief contains 3,086 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1), and is in compliance with Rule 9.4(i) of the Texas Rules of Appellate Procedure.

*/s/ Benjamin R. Bingham*
BENJAMIN R. BINGHAM

16

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 9th day of March, 2015, a true and correct copy of the above and foregoing has been served by: ☐ **United States First-Class Mail**; ☐**Facsimile Transmission**; ☐**CM/RRR**; ☒**E-Mail**; and/or ☐**Hand Delivery** on the following:

Albert M. Walker, Jr.,
Hymeadow Woods, Ste. 3-202,
12325 Hymeadow Dr.,
Austin, Texas 78750
***Counsel for Appellees***

 */s/ Benjamin R. Bingham*
BENJAMIN R. BINGHAM